UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

GARY VAN WAEYENBERGHE,       )
                            )
                Petitioner  )
                            )
        v.                  )    CAUSE NO. 3:08-CV-456 RM
                            )    (arising out of 3:04-CR-87(01) RM)
UNITED STATES OF AMERICA,    )
                            )
                Respondent  )

<u>OPINION and ORDER</u>

On April 25, 2005, a jury convicted Gary Van Waeyenberghe of fifty-four criminal counts: one count of conspiracy, seventeen counts of mail fraud, seventeen counts of wire fraud, and nineteen counts of money laundering. The court sentenced Mr. Van Waeyenberghe to 168 months' imprisonment. Mr. Van Waeyenberghe appealed his conviction and sentence on multiple grounds, and the court of appeals affirmed. Notably, for this opinion's purposes, the appellate court affirmed the district court's denial of his motion to appoint new counsel and affirmed Mr. Van Waeyenberghe's sentence as reasonable.

Mr. Van Waeyenberghe filed a timely *pro se* motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. Mr. Van Waeyenberghe claims ineffective assistance of counsel for counsel's failure to challenge his conviction, counsel's failure to challenge his sentencing, counsel's failure to raise a double jeopardy challenge, the court's failure to appoint new counsel because of conflicts of interest between himself and counsel, and counsel's failure to properly advise him of the consequences of going to trial instead of pleading guilty.

For the reasons stated below, the court denies Mr. Van Waeyenberghe's requests for an evidentiary hearing and denies Mr. Van Waeyenberghe's § 2255 motion in its entirety.

The background behind Mr. Van Waeyenberghe's conviction and appeal is set forth in the court of appeals' decision, United States v. Van Waeyenberghe, 481 F.3d 951 (7th Cir. 2007), and the reader's familiarity with that background is assumed. Facts particular to each of Mr. Van Waeyenberghe's claims are set out below as necessary.

ANALYSIS

Relief under § 2255 is reserved for extraordinary situations. Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996) (citing Brecht v. Abrahamson, 507 U.S. 619, 633-634 (1993)). "Relief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." Kelly v. United States, 29 F.3d 1107, 1112 (7th Cir. 1994), overruled on other grounds, United States v. Ceballos, 302 F.3d 679 (7th Cir. 2002); see also Brecht v. Abrahamson, 507 U.S. at 633-634 (noting that habeas relief is meant to cure only grievous wrongs). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

"[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003). To prevail on a claim of ineffective assistance of counsel, Mr. Van Waeyenberghe must show both (1) that his counsel's performance was objectively unreasonable in its deficiency such that he was denied the counsel guaranteed by the 6th Amendment, and (2) that this deficient performance prejudiced his defense, rendering the outcome of the proceedings against him unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984); Jones v. Page, 76 F.3d 831, 840 (7th Cir. 1996). If Mr. Van Waeyenberghe cannot make a showing on both prongs, his claim must be dismissed. Jones v. Page, 76 F.3d at 840.

As to the first prong, judicial scrutiny of counsel's performance must be "highly deferential" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Jones v. Page, 76 F.3d at 840 (*quoting* Strickland v. Washington, 466 U.S. at 689). A lawyer's duty is not to raise every conceivable defense or obstruction, for a "lawyer has an obligation to be truthful and forthright with the court, [and] he has no duty to make a frivolous argument." Fuller v. United States, 398 F.3d 644, 652 (7th Cir. 2005) (quotation removed). To show prejudice under the second prong, Mr. Van Waeyenberghe must show that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694; Jones v. Page, 76 F.3d at 840.

*Failure to Challenge Money Laundering Convictions*

Mr. Van Waeyenberghe was charged and convicted of nineteen counts of money laundering under 18 U.S.C. § 1957. He engaged in nineteen transactions using criminally derived funds to make personal purchases (a down payment on a residence, jewelry for his girlfriend, a car for himself) and investments in business ventures unrelated to First Choice. These nineteen transactions each exceeded $10,000 and amounted to a net total of $3,708,258. This was but a slice of the reality that Mr. Van Waeyenberghe was responsible for stealing more than $25 million from investors. Thus, and pursuant to U.S.S.G. § 2F1.1(b)(1)(Q) (1998), his offense level was enhanced by sixteen levels at sentencing because he was responsible for a loss of more than $20 million but less than $40 million.

Mr. Van Waeyenberghe argues that he was denied his right to counsel at district and appellate levels due to counsels' failure to challenge his money laundering convictions under United States v. Scialabba, 282 F.3d 475 (7th Cir. 2002), *accord* United States v. Santos, 128 S. Ct. 2020 (2008). Scialabba held that "at least when the crime entails voluntary, business-like operations, 'proceeds' [as used in 18 U.S.C. § 1956(a)(1)] must be net income." United States v. Scialabba, 282 F.3d at 475. Mr. Van Waeyenberghe contends that the indictment and

4

convictions against him for nineteen counts of money laundering under 18 U.S.C. § 1957 were improper because they were premised on the "gross receipts" and not "net profits" theory of "proceeds." Accordingly, any reasonably competent attorney, he argues, would have challenged his money laundering convictions as unlawful, and he requests the court to vacate and set aside all nineteen money laundering counts and correct his sentence.

Neither the indictment nor the jury instructions ever employed the term "gross receipts." Jury Instruction 30 stated, "'Proceeds' as used in these instructions means the net income or profits of the criminal activity." [Doc. No. 39]. Juries are presumed to have followed instructions, United States v. Jarrett, 133 F.3d 519, 536-67 (7th Cir. 1998) (citing Parker v. Randolph, 442 U.S. 62, 73 (1979)). That Mr. Van Waeyenberghe was convicted for spending fraudulently obtained money for purposes unrelated to First Choice's supposed investment services renders any argument that he actually money-laundered "gross receipts" instead of "net profits" an impossibility: the money wasn't spent on First Choice's business expenses.

Mr. Van Waeyenberghe complains that the jury wasn't instructed that the government had to prove those "net profits" beyond a reasonable doubt, nor was the jury instructed on what "net profits" meant. The first contention is incorrect, because Jury Instruction 27 instructed the jury that the government had the burden of proving each element of money laundering beyond a reasonable doubt. [Doc. No. 39]. Regarding the second contention, "A district court need not define

a term when its use in jury instructions comports with its ordinary meaning. However, a court must define 'enigmatic terms' that leave the jury to speculate on their meaning." Miller v. Neathery, 52 F.3d 634, 638 (7th Cir. 1995). Mr. Van Waeyenberghe's case isn't one in which confusion might have existed over what "net profits" might include. *Cf.* United States v. Lee, 558 F.3d 638, 643 (7th Cir. 2009) ("The jury instructions . . . did not distinguish between advertising and other expenses. It is impossible to tell whether the juries based their verdicts on the legally insufficient ground that rent and utilities are net proceeds, or the possibly legally sufficient ground that advertising costs are net proceeds."). Mr. Van Waeyenberghe was convicted of using the proceeds (the net profits) of his illegal activity to engage in transactions unrelated to First Choice's purported business purposes. His second contention is without merit.

The core of Mr. Van Waeyenberghe's argument is premised on a fundamental confusion between the basis of his conviction and the basis of the sixteen level upward adjustment he received at sentencing. Mr. Van Waeyenberghe repeatedly represents that he was convicted on account of $25,521,966.00 in "gross proceeds" from criminal activities. He misunderstands. Mr. Van Waeyenberghe was charged with and convicted of nineteen counts of laundering criminally derived funds, engaging in nineteen separate transactions that each amounted to more than $10,000, for a net total of $3,708,258.00. The figure on which Mr. Van Waeyenberghe focuses is the total loss for which he was responsible: stealing more than $25 million from investors. This total loss was the

basis of his sixteen level enhancement at sentencing, a calculation the court of appeals has already affirmed. <u>United States v. Van Waeyenberghe</u>, 481 F. 3d 951, 960 (7th Cir. 2007).

Mr. Van Waeyenberghe's claim of ineffective assistance of counsel for failure to challenge his conviction as improper is without merit; his motion to vacate all nineteen money laundering counts and correct sentence is denied.

*Failure to Challenge Sentence*

Closely related to his first claim, Mr. Van Waeyenberghe next argues that his prison sentence was improperly enhanced sixteen levels based on his responsibility for a total loss of $25,521,966.00. He contends that this amount represents the "gross proceeds" from his criminal activity, and not the "net proceeds" of his criminal activity. Accordingly, he argues he suffered ineffective assistance of counsel because any reasonable attorney would have argued this enhancement calculation was incorrect. He asks the court to correct his sentence so it is based on "net proceeds," or to hold an evidentiary hearing on this issue.

This is the flip side of incorrectly intermixing the $3.7 million of money laundered in nineteen separate transactions with the $25 million total loss for which Mr. Van Waeyenberghe's sentence was enhanced. They are separate concepts. One has to do with baseline criminal liability; the other has to do with appropriate sentence. The standards for enhancement in the sentencing

guidelines are concerned with total loss—what is "gross" and what is "net" is beside the point in U.S.S.G. § 2F1.1 (1998).

The court of appeals already has labelled Mr. Van Waeyenberghe's first attack on his sentence as "frivolous" and, after running through the rationale behind his sentence (which is at the low end of the advisory range), stated unequivocally, "We see nothing unreasonable about the resulting 168-month sentence Van Waeyenberghe received for his far-reaching fraudulent conduct." United States v. Van Waeyenberghe, 481 F.3d 951, 960 (7th Cir. 2007). Therefore, Mr. Van Waeyenberghe's claim of ineffective assistance of counsel at sentencing is without merit and his requests to correct sentence and for an evidentiary hearing are denied.

*Refusal to Challenge Double Jeopardy*

Third, Mr. Van Waeyenberghe argues that he suffered ineffective assistance of counsel because his trial counsel, Brian May, refused to raise a double jeopardy claim when Mr. Van Waeyenberghe asked him to do so. He asks the court to vacate and set aside all 54 counts of his criminal conviction or to hold an evidentiary hearing as to whether he voluntarily and knowingly waived his double jeopardy rights.

In January, 2003, Mr. Van Waeyenberghe entered a consent decree with the SEC, by which he was to disgorge profits of $24.5 million plus $6.8 million in prejudgment interest, and pay a $110,000 civil penalty. He also agreed to "waive

any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein." United States v. Van Waeyenberghe, 481 F.3d 951, 956 (7th Cir. 2007). Very shortly before trial, Mr. Van Waeyenberghe filed a *pro se* motion with the district court to appoint new counsel. [Doc. No. 22]. He claimed his previous attorney advised him to mount a double jeopardy challenge to his eventual criminal prosecution, but that his current attorney wouldn't do so. The court denied his motion as without merit and as being nothing but a tactic to delay trial. [Doc. No. 24]. Mr. Van Waeyenberghe contends that his trial counsel didn't investigate the double jeopardy issue sufficiently, and states that had he known he could be criminally prosecuted he never would have waived his double jeopardy rights. Mr. May states, "After reviewing cases cited by Judge Sharp, I did not believe there existed a viable Double Jeopardy claim in which to challenge the Indictment so my strategy was to continue to prepare for trial." May Aff. ¶ 4 [Doc. No. 95]. Mr. Van Waeyenberghe says the court of appeals didn't address his double jeopardy claim because he never properly raised the claim in the trial court. As a result, he says, whether his waiver of double jeopardy rights was knowingly and voluntarily made has never been addressed, nor could it have been because of his counsel's actions.

The court of appeals found that Mr. Van Waeyenberghe was procedurally barred from raising a double jeopardy claim on appeal because the challenge wasn't properly raised in the district court. United States v. Van Waeyenberghe,

481 F.3d 951, 958 (7th Cir. 2007). Nonetheless, the court of appeals took the extra step of thoroughly addressing the double jeopardy issue:

> The Double Jeopardy Clause protects only against multiple *criminal* punishments meted out in successive proceedings. The initial test of whether a punishment is civil or criminal is whether the legislature indicated either expressly or impliedly a preference for one label or the other. The SEC penalties on their face are civil in nature. Thus, Van Waeyenberghe must demonstrate that the statutory scheme is so punitive in purpose or effect that the civil remedy has been transformed into a criminal penalty. Only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. Van Waeyenberghe has not advanced such proof here. He claims that the district court should have made such a determination by analyzing the seven factors laid out in [Hudson v. United States, 522 U.S. 93, 98 (1997)]. But Van Waeyenberghe himself offers little to no analysis under Hudson as to why the injunction, disgorgement, and restitution required of him are anything other than equitable remedies that present no bar to subsequent criminal prosecution. He does suggest cursorily that the $110,000 civil penalty was excessive. But assessing a civil penalty itself does not create a double jeopardy problem, and the amount at issue here falls far short of demonstrating by the clearest proof that the civil remedy is actually a criminal punishment.

Id. at 958-959 (citations and quotations omitted, emphasis in the original).

While the court now reviews the reasonableness of Mr. Van Waeyenberghe's trial counsel's performance and not the double jeopardy issue directly, the court of appeals and the cases cited in its opinion demonstrate that Mr. Van Waeyenberghe's criminal trial didn't implicate double jeopardy. Mr. Van Waeyenberghe suffered no prejudice and it was quite reasonable, given the law of double jeopardy, for counsel to focus his attention on meritorious motions and defenses rather than on a frivolous double jeopardy claim. Whether Mr. Van

10

Waeyenberghe's waiver of double jeopardy in the consent decree was knowing and voluntary does matter because, as the court of appeals pointed out, double jeopardy isn't implicated in this particular criminal proceeding.

Mr. Van Waeyenberghe's claim of ineffective assistance of counsel for refusal to raise a double jeopardy claim is without merit and his motion to set aside his entire conviction or to hold an evidentiary hearing is denied.

*District Court's Denial of Motion to Appoint New Counsel*

Fourth, and related to his double jeopardy claim, Mr. Van Waeyenberghe argues that the court denied him effective assistance of counsel when it refused to conduct a hearing and appoint him new counsel two weeks before trial. The court of appeals squarely addressed and affirmed the district court's decision on this issue. *See* United States v. Van Waeyenberghe, 481 F.3d 951, 959-960 (7th Cir. 2007). "[O]nce [the court of appeals] has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a district judge asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it." United States v. Mazak, 789 F.2d 580, 581 (7th Cir. 1986); *see also* Fuller v. United States, 398 F.3d 644, 648 (7th Cir. 2005) (applying "law of the case doctrine" in § 2255 context).

Mr. Van Waeyenberghe presents no reason for this court to reexamine this issue. His claim that the court denied him effective assistance of counsel in

refusing to conduct a hearing to appoint new counsel two weeks before trial is without merit and his request for an evidentiary hearing is denied.

*Failure to Properly Advise on the Sentencing Risks of Trial*

Fifth and finally, Mr. Van Waeyenberghe claims ineffective assistance of counsel because counsel allegedly advised him to reject the government's plea offer, exposing him to a prison sentence that is longer than what he would have received had he accepted the plea offer. Mr. Van Waeyenberghe asks that his convictions be set aside and that he be allowed to accept the government's proposed plea agreement, or that there be an evidentiary hearing on the issue.

Mr. Van Waeyenberghe filed two affidavits in which he states that counsel advised that his sentence would be around ten years whether he accepted the plea agreement or was found guilty by a jury. Mr. Van Waeyenberghe says counsel "never discussed the details or specifics of the offer" with him. Petr.'s 1st Aff. ¶ 5 [Doc. No. 88]. He states, "Had I known of the true risks of proceeding to trial instead of accepting the government's proposed plea agreement, I would have not gone to trial but entered a plea of guilty, especially in light of the fact that the government was going to be able to use all the evidence that was presented during my prior civil proceedings." Id.

Mr. Van Waeyenberghe's counsel, Brian May, reports in his own affidavit that he discussed several times with Mr. Van Waeyenberghe the option of pleading guilty. On or around January 24, 2005, Mr. Van Waeyenberghe told Mr. May he

was putting together a plea agreement to present to the government. Mr. May attached a typewritten version of this plea proposal to his affidavit. *See* May Aff. Att. 2 [Doc. No. 95]. Mr. Van Waeyenberghe states in his reply brief that he had never seen a copy of this alleged plea proposal until the government attached it to its response brief. *See* Petr.'s Reply at 16 [Doc. No. 98]. That is technically true: Mr. May makes the uncontested statement in his affidavit that Mr. Van Waeyenberghe handed him a handwritten plea proposal on February 2, 2005, which Mr. May had his secretary type before mailing it to the Assistant U.S. Attorney on February 7, 2005. May Aff. ¶ 5 [Doc. No. 95]. Mr. Van Waeyenberghe states that his proposed plea agreement "clearly" demonstrates his eagerness to plead guilty. Petr.'s Reply at 17 [Doc. No. 98].

On or about February 10, 2005, Mr. May visited Mr. Van Waeyenberghe to relay the government's offer of a plea agreement, which included a sentence not to exceed ten years. Mr. May insists he never told Mr. Van Waeyenberghe to reject the offer, but instead advised him that if he was convicted he would face more prison time because of the loss of acceptance of responsibility. May Aff. ¶ 5 [Doc. No. 95].

Mr. Van Waeyenberghe sets out in his second affidavit his recollection of the contents of that conversation. It is the only conversation Mr. Van Waeyenberghe reports having with Mr. May on the issue of pleading. In substance, he states that Mr. May told him that he couldn't obtain a copy of the plea agreement unless he first agreed to its terms because "That's just how the government works." He

would have to agree first, and work out the terms later. Then, Mr. May allegedly told him that, even though he faced 54 criminal counts, the maximum possible sentence he could receive under all the charges grouped together was ten years and that "you gain nothing" with the plea agreement. Mr. May allegedly stated nothing about the government's intent to offer an acceptance of responsibility reduction. *See* Petr.'s 2nd Aff. ¶¶ 5-7 [Doc. No. 98]. The next day, February 11, 2005, Mr. May wrote to the AUSA to state that Mr. Van Waeyenberghe had considered the government's offer and rejected it. *See* May Aff. Att. 3 [Doc. No. 95]. It appears that Mr. Van Waeyenberghe drafted his plea agreement in an attempt to minimize his jail time to a sentencing range of 21 to 27 months (offense level 15, criminal history II). *See* May Aff. Att. 2, at ¶ 11 [Doc. No. 95].

Serious credibility issues infect Mr. Van Waeyenberghe's statements, but since the court will not grant an evidentiary hearing on the matter, the court assumes for today's purposes (without deciding) that Mr. Van Waeyenberghe's version of the conversation is true.

Mr. Van Waeyenberghe's version of the events is surrounded by a larger context. At arraignment, the court advised Mr. Van Waeyenberghe that he faced up to 365 years in prison and a $13.5 million fine. Mr. Van Waeyenberghe went into his criminal proceedings with a rich criminal history, including experience in federal criminal court. His plea proposal to the government indicates a rather sophisticated knowledge of the sentencing guidelines and demonstrates that even if Mr. May didn't mention the possibility of acceptance of responsibility, Mr. Van

Waeyenberghe knew what a 3-level reduction in offense level could mean for him. *See* May Aff. Att. 2, at ¶¶ 9, 11 [Doc. No. 95].

Mr. Van Waeyenberghe never demanded to see the government's plea proposal. After the conversation, he never pursued a plea agreement with the government, never making a counteroffer or otherwise pushing the issue during the more than two months between that time and his trial.

The record indicates that Mr. Van Waeyenberghe is no shrinking violet who simply accepts whatever his lawyer tells him. He fought his lawyer on the sentencing guidelines for his sentencing, *see* May Aff. Att. 1 [Doc. No. 95]; he fought his lawyer on the double jeopardy issue and on overall case strategy, *see, e.g.*, motion to appoint new counsel [Doc. No. 22]. His motion for new counsel amply demonstrates his sophistication and his ability to demand his rights from all angles. Mr. Van Waeyenberghe was concerned that there were at least ten motions that should be filed to preserve his rights and issues for trial. *See* id. at 4. He never alleged that Mr. May failed to pursue any desire he might have had to plead guilty; he never alleged that counsel's efforts to bargain with the government were unsatisfactory; he never alleged that counsel gave him bad advice on the matter of pleading. Rather, his dissatisfaction arose from his determination to have the charges dropped, to go to trial and weight the trial in his favor, or to obtain a lenient sentence. *See* id.; *see also* May Aff. Att. 1 [Doc. No. 95].

Mr. Van Waeyenberghe essentially asks that he now be allowed a reduction in sentence for acceptance of responsibility, since he asks that his sentence be set aside in favor of accepting the government's plea agreement. His sentence would then be reduced from 14 years (168 months) to 10 years (121 months). He was sentenced for 14 years under the 1998 sentencing guidelines on the basis of a category IV criminal history and an offense level of 32. This was the low end of the applicable sentencing range. Had he accepted responsibility his offense level could have been reduced 3 levels to 29, which, given his criminal history category, would produce a 10 year (121 month) sentence, also at the low end of the applicable range. The risk Mr. Van Waeyenberghe took in going to trial was an increased sentence for refusal to accept responsibility.

Mr. Van Waeyenberghe requests an evidentiary hearing on this issue, but submitting a motion to vacate under penalty of perjury along with an affidavit doesn't per se entitle Mr. Van Waeyenberghe to an evidentiary hearing. Once the motion is submitted in this form, the allegations contained in it become evidence, allowing the court to evaluate the allegations and determine whether a sufficient threshold showing has been made to warrant an evidentiary hearing. Karo v. United States, 467 F.3d 1063, 1068 (7th Cir. 2006). The court's first task is to determine if an evidentiary hearing is warranted. For the reasons that follow, it is not.

In the usual case, a defendant is claiming ineffective assistance of counsel because he pleaded guilty and regrets his decision. Mr. Van Waeyenberghe regrets

his decision to go to trial. To make out a claim for ineffective assistance of counsel in the context of choosing whether to plead guilty, Mr. Van Waeyenberghe must (1) show that counsel's performance fell below an objective standard of reasonableness, and (2) establish through objective evidence that there is a reasonable probability that, but for counsel's advice, he would have pled guilty. Paters v. United States, 159 F.3d 1043, 1045-1046 (7th Cir. 1998); *see also* Hill v. Lockhart, 474 U.S. 52, 57-59 (1985); Strickland v. Washington, 466 U.S. 668, 687-688 (1984); Bethel v. United States, 458 F.3d 711, 716-717 (7th Cir. 2006). "[T]his analysis takes place in the context of the presumption that an attorney's conduct is reasonably proficient." Galbraith v. United States, 313 F.3d 1001, 1008 (7th Cir. 2002).

### *1. Objective Reasonability of Counsel's Performance*

"[C]ounsel's alleged miscalculation, standing alone, could never suffice to demonstrate deficient performance unless the inaccurate advice resulted from the attorney's failure to undertake a good-faith analysis of all of the relevant facts and applicable legal principles. Bridgeman v. United States, 229 F.3d 589, 592 (7th Cir. 2000) (citations omitted); *see also*, Bethel v. United States, 458 F.3d 711, 718-20 (7th Cir. 2006) (finding counsel's mistake resulting in 67-92 month longer sentence than anticipated did not of itself prejudice client); United States v. Teller, 762 F.2d 569, 577 (7th Cir. 1985) (finding minimum attorney competence despite defendant's guilty plea in response to attorney's mistaken advice that acquittal by

reason of insanity would still result in "spend[ing] the rest of your life in an insane asylum").

This standard of good faith holds even if one could call a sentencing prediction a "gross mischaracterization" of the sentencing consequences of a plea. For example, even if an attorney predicts a sentencing range of 46-57 months, and the actual resulting sentence is 262-327 months, that is not, by itself, proof of counsel's constitutional deficiency. *See* United States v. Barnes, 83 F.3d 934, 937, 940 (7th Cir. 1996). Rather, "in the plea bargaining context, a defendant must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence." United States v. Cieslowski, 410 F.3d 353, 358-59 (7th Cir. 2005); *see also* United States v. Barnes, 83 F.3d at 940 (finding no constitutional deficiency where sentencing prediction was grossly incorrect because no evidence existed that counsel did not make a good faith effort in advising his client); Bridgeman v. United States, 229 F.3d at 592 (finding no constitutional deficiency where sentencing prediction was grossly incorrect because petitioner failed to allege facts demonstrating counsel's prediction was not undertaken in good faith). Thus, attorneys aren't held to a "stringent standard," and the standard means what it says: an attorney's negligence isn't sufficient; the petitioner must be able to show a lack of good faith effort. United States v. Cieslowski, 410 F.3d at 359.

Mr. Van Waeyenberghe hasn't alleged facts demonstrating that his counsel's prediction wasn't undertaken in good faith. Mr. Van Waeyenberghe didn't ask his

attorney to check on the issue again, even though Mr. Van Waeyenberghe was quite demanding when he wanted a particular strategy or defense pursued. Mr. Van Waeyenberghe has never alleged dissatisfaction with his attorney's performance on this issue until now, even though he had ample opportunity to do so and had expressed dissatisfaction on multiple other grounds. Mr. Van Waeyenberghe does not and cannot claim that his attorney ever refused to pursue anything related to a plea agreement, and Mr. May actually handed on Mr. Van Waeyenberghe's plea proposal to the government despite the unlikelihood of acceptance. If Mr. Van Waeyenberghe's version is accepted, Mr. May could be said to have slipped up in a single conversation with Mr. Van Waeyenberghe, but he certainly never failed to act in good faith.

### 2. Prejudice

In the context of prejudice resulting from a plea decision, "there is a significant difference between the consequences emanating from a decision to reject a plea agreement and not plead guilty and the decision to enter a guilty plea." Johnson v. Duckworth, 793 F.2d 898, 901 (7th Cir. 1986). Rejection of the plea offer results in the defendant going to trial "with all of the concomitant constitutional safeguards that are part and parcel of our judicial process." Id. at 900. This reality explains why a sworn statement doesn't of itself entitle Mr. Van Waeyenberghe to an evidentiary hearing.

Mr. Van Waeyenberghe's sworn statement says that, but for counsel's advice, he would have accepted the government's offer of a plea agreement. Even though there is a sworn affidavit, the court must consider whether objective evidence shows that a reasonable probability exists that counsel's advice actually affected Mr. Van Waeyenberghe's decision to refuse to plead guilty. United States v. Cieslowski, 410 F.3d 353, 359 (7th Cir. 2005); Paters v. United States, 159 F.3d 1043, 1047 (7th Cir. 1998).

In Paters, the petitioner and his parents each submitted signed declarations regarding defense counsel's incorrect prediction as to sentencing length. Paters v. United States, 159 F.3d at 1047. Counsel told his client that he had "nothing to lose" by going to trial because his sentence would be five years whether he pleaded guilty or was convicted by trial. Id. at 1044. But, "this [did] not prove the ultimate question—that there is a reasonable probability that Paters would have *accepted* the plea deal but for his attorney's advice." Id. at 1047. A signed declaration or affidavit from petitioner himself is nothing but a naked, self-serving assertion and doesn't in itself constitute "objective evidence." Id. at 1047 nn. 5 & 6. In Paters, the government conceded all of petitioner's factual assertions, so his naked assertions were clothed with the mantle of objectivity. *See* Paters v. United States, 159 F.3d at 1048. Only when such objectivity was found was Paters entitled to an evidentiary hearing. *See* id. No such factual concession or other factual support exists here.

Mr. Van Waeyenberghe can provide no objective evidence that he would have pleaded guilty but for his attorney's advice. Even assuming his attorney spoke to him as Mr. Van Waeyenberghe claims in his affidavit, Mr. Van Waeyenberghe can present nothing but his naked assertion that he would have otherwise pleaded guilty. The context in which he makes his claim demonstrates that no such evidence can be found.

Finally, even though it is conceivable that Mr. Van Waeyenberghe wanted to plead guilty at some point, there is no evidence that Mr. Van Waeyenberghe would have accepted the particular offer on the table of ten years' imprisonment. In fact, the evidence shows he rejected it because a ten-year offer was far beyond what he was willing to accept.

### 3. Claim Denied

Therefore, Mr. Van Waeyenberghe's claim that he was denied effective assistance of counsel at the pleading stage of his proceedings is without merit and his request to set aside his conviction and accept the government's plea offer, or to hold an evidentiary hearing on the issue, is denied.

### CONCLUSION

For the reasons stated above, the court DENIES Mr. Van Waeyenberghe's § 2255 petition in its entirety.

SO ORDERED

ENTERED: October 13, 2009


                                    /s/ Robert L. Miller, Jr.
                                    Chief Judge
                                    United States District Court


cc:   G. Van Waeyenberghe
      B. Brook